J-S62042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.L., FATHER | : | No. 788 MDA 2017 |

Appeal from the Order Entered April 3, 2017
in the Court of Common Pleas of Mifflin County
Orphans' Court at No(s):  11 of 2016

BEFORE:   STABILE, MOULTON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED OCTOBER 17, 2017**

C.L. (Father) appeals from the order entered April 3, 2017, in the Court of Common Pleas of Mifflin County, which terminated involuntarily his parental rights to his minor son, B.H., born in March 2008.[1]  We affirm.

We summarize the relevant factual and procedural history of this matter as follows.  Child entered foster care on June 3, 2015, after Mother informed Mifflin County Social Services Agency (the Agency) that she was unable to care for Child and his half-brother.  N.T., 12/12/2016, at 62.  Child was adjudicated dependent by order dated June 22, 2015.  Petitioner's Exhibit B.H. - 1 (Order of Adjudication – Child Dependent).  The record reveals that Child and Father have never met in person, due to Father's

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The order also terminated the parental rights of Child's mother, E.H. (Mother).  Mother did not file a brief in connection with this appeal, nor did she file a separate appeal.

frequent incarcerations. N.T., 12/12/2016, at 21, 79. At the time Child was adjudicated dependent, Father was incarcerated at Forrest City Medium Federal Prison in Arkansas. *Id.* at 78. Father was released to a halfway house on July 5, 2015. *Id.* However, Father was incarcerated at Lackawanna County Prison in Pennsylvania shortly thereafter, on August 11, 2015. *Id.* Father was released on November 1, 2015, only to be incarcerated again on November 18, 2015. *Id.*

On September 27, 2016, the Agency filed a petition to terminate involuntarily Father's parental rights to Child. The orphans' court conducted a termination hearing on December 12, 2016. Following the hearing, on April 3, 2017, the court entered an order terminating Father's parental rights.[2] Father timely filed a notice of appeal on April 28, 2017, and filed a

_____

[2] It appears that the orphans' court waited to enter its termination order until it could enter a single order terminating both Father's and Mother's parental rights at the same time. Mother initially executed a consent to adoption form on December 12, 2016. However, Mother later filed a petition to revoke her consent on February 17, 2017, which the court granted on February 22, 2017. The court then scheduled an additional termination hearing as to Mother only on March 24, 2017.

Prior to the hearing, on March 22, 2017, the Agency filed a motion to supplement the record with updated information regarding the location and duration of Father's current incarceration. The orphans' court entered an order indicating that it would consider the motion at the March 24, 2017 hearing. It is not clear from the record whether the court ultimately granted or denied the Agency's motion, because Father did not request that the March 24, 2017 hearing be transcribed, and because the court did not address the motion in its opinion or enter a subsequent order disposing of the motion.

concise statement of errors complained of on appeal on May 2, 2017.[3]

Father asks this Court to review whether the record contains competent evidence to support the orphans' court's determination that the termination of Father's parental rights was warranted. Father's Brief at 5.

We address this issue mindful of our standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

_____

[3] Father violated Pa.R.A.P. 1925(a)(2)(i) by failing to file a concise statement of errors complained of on appeal at the same time as his notice of appeal. We have accepted Father's concise statement pursuant to *In re K.T.E.L.*, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that the appellant's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of her claims, as there was no prejudice to any party).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subs]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subs]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to subsections 2511(a)(2), (5), (8), and (b).[4] We need only agree with the court as to any one subsection of 2511(a) in order to affirm.[5] *In re*

_____

[4] Father makes no effort to challenge the termination of his parental rights pursuant to subsection 2511(b) in the argument section of his brief. Therefore, we conclude that Father waived any challenge to subsection 2511(b), and we focus solely on subsection 2511(a). *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017) (holding that the appellant waived any challenge to subsections 2511(a)(2) and (5) by failing to develop an argument in her brief, and by conceding that the agency presented clear and convincing evidence).

[5] We note that the orphans' court erred by concluding that Father's parental rights could be terminated under subsections (a)(5) and (8). Both of these subsections require that the subject child has "been removed from the care of the parent by the court or under a voluntary agreement with an agency" in order to be applicable. 23 Pa.C.S. § 2511(a)(5), (8). Because Child was never in Father's care, and therefore was not removed from Father's care, his parental rights cannot be terminated under those subsections. *See In re C.S.*, 761 A.2d 1197, 1200 (Pa. Super. 2000) (*en banc*) (concluding that termination was inappropriate under subsections 2511(a)(5) and (8) "because the record reflects that C.S. was never in [the a]ppellant's care and, therefore, could not have been removed from his care").

*B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under subsection 2511(a)(2), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, the orphans' court found that Father is incapable of parenting Child, and that Father cannot remedy his parental incapacity in a timely manner. Orphans' Court Opinion, 4/3/2017, at 9. The court observed that Father has a lengthy history of criminal activity and incarcerations. *Id.* The court further noted that Father has never met Child in person, and that Father was prevented from visiting with Child because his behaviors while incarcerated caused him to be placed in restricted housing. *Id.* at 8-9.

Father argues that the orphans' court erred by terminating his parental rights based solely on his incarceration. Father's Brief at 8-14. Father contends that his incarceration prevented him from complying with the Agency's child permanency plan, but that he utilized what limited resources were available to him to maintain a relationship with Child while incarcerated. *Id.* at 8, 11.

Our review of the record supports the findings of the orphans' court. During the termination hearing, the court heard the testimony of Mother. Mother testified that Father and Child have never met in person. N.T., 12/12/2016, at 21. However, Father made a consistent effort to call her and send cards to Child from prison. *Id.* at 12, 21-23. Mother recalled that she moved to Seattle in 2009, when Child was about a year old. *Id.* at 23. At that time, Mother told Father that he should not call her anymore or write as often, because she was in a relationship with another man. *Id.* at 22.

- 6 -

Nonetheless, Father continued to send cards or letters to Child about every three months. *Id.*

The orphans' court also heard the testimony of Agency caseworker, and Assistant Administrator, Nicole Patkalitsky. Ms. Patkalitsky testified that Father has a lengthy history of criminal activity, substance abuse, incarceration, unstable housing, financial instability, and inability to demonstrate proper parenting. *Id.* at 77. Ms. Patkalitsky detailed Father's history of incarcerations as follows.

> He was incarcerated on August 26th of 2004 to May 5th of -- to May 12th of 2005 at the county jail. He was then released until August 9th of 2006 and was in county jail until August 11th of 2006. On August 11th of 2006 he was then transferred to state prison until March 1st of 2007. July 25th of 2008 he was sent to Dauphin County Prison. He was then extradited back to New Jersey and went to Forrest City Medium Federal Prison on May 8th of 2009. On July 5th of 2015 he was released from For[r]est City and moved into a half-way house in Scranton. Then on August 11th of 2015 he went back to Lackawanna county prison. He was released from there on November 1st and then was re-incarcerated on November 18th of 2015. And that is where he con -- that's where he still is. And he was just sentenced to 14 to 36 months in state prison.
>
> ***
>
> . . . . And I believe after he goes to -- after he does his recent [s]entence there's still a federal detainer that he could be then transferred to federal prison.

*Id.* at 77-78.[6]

---

[6] Father's most recent incarceration is the result of his guilty plea to possession with intent to deliver a controlled substance. Petitioner's Exhibit
*(Footnote Continued Next Page)*

Ms. Patkalitsky further testified that the Agency attempted to provide Father with services during his brief release from incarceration in November 2015. *Id.* at 79. However, Father's return to incarceration prevented him from participating in services. *Id.* at 79-80. Ms. Patkalitsky explained that she spoke with Father's prison counselor, who informed her that Father is "currently classified as special handling violent," and that he is not permitted to participate in services, visits, or phone calls. *Id.* at 80. Father did not have any in-person contact with Child during his dependency. *Id.* at 79. Moreover, while Father sent letters to Child during his dependency, the letters were not given to Child due to the recommendations of Child's therapist. *Id.* at 98.

Thus, the record confirms that Father is incapable of parenting Child, and that Father cannot remedy his parental incapacity. The record reveals that Father has been incarcerated almost continuously since 2004. When Father was released from incarceration in July 2015, he immediately began committing new crimes and was incarcerated again. Father has never acted as a parent for Child at any point in his life, and it is clear that Father will not be able to act as Child's parent at any point in the foreseeable future. Indeed, Child is now nine and a half years old, and has never even met

*(Footnote Continued)* ─────────────

R.H. – 4 (Mifflin County Secure Court Summary). We note that Petitioner's Exhibit R.H. – 4 is mislabeled, as R.H. is Child's half-brother, whose father is not Father.

Father. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

In reaching this decision, we stress that our Supreme Court has clarified the extent to which an orphans' court may rely upon a parent's incarceration when terminating parental rights. *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012). It is now settled that "a parent's incarceration is relevant to the [sub]section (a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that the section contemplates." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted). Contrary to Father's argument on appeal, the orphans' court was well within its discretion when it relied on Father's repeated periods of incarceration, as well as his apparent incorrigibility, as its principal reasons for terminating his parental rights. *In re Adoption of W.J.R.*, 952 A.2d 680, 687 (Pa. Super. 2008) (affirming trial court's determination that the father's "repeated pattern of criminal activity and his failure to comply with his FSP goals satisfies the requisites of incapacity, abuse, neglect or refusal of the parent").

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Father's parental rights to Child involuntarily. Therefore, we affirm the court's April 3, 2017 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2017